## No. XIII.

### NATHANIEL M. RIKER, SURVIVING PARTNER OF ABRAM RIKER, DECEASED, v. J. P. FREEMAN & CO.

*Two Cases. Appeal from Red River County.*

JONES (WILLIAM J.), JUSTICE.—These cases come up by appeal from the District Court of Red River County, and present the following facts: A. Riker & Co. drew a bill of exchange on the 20th day of September, 1836, in New Orleans, payable twelve months after date, on John H. Graham (which was accepted by him) in favor of J. P. Freeman & Co. for the sum of $272.22; also one other bill of exchange, drawn by the said A. Riker & Co. on the 20th March, 1837, in New Orleans, payable twelve months thereafter, on John H. Graham (which was accepted by him) in favor of J. P. Freeman & Co. for the sum of $539.11. Upon these bills of exchange, two suits were instituted by the appellees in the District Court of Red River County against the appellant.

Upon the trial in the court below the defendant filed his demurrer to the petition of the plaintiffs, which was overruled. One ground of demurrer, inter alia, was the want of the averment of notice of nonpayment, prior to the institution of suits by the holders.

In the examination of the authorities upon this important branch of commercial law by which these cases are to be determined, we find it well settled, that in order to entitle the holders to a suit against the drawers, they must show a demand of the drawee and reasonable notice of default of payment; and to enable the holders to prove notice of demand and failure to pay, the allegations must be plainly and distinctly set forth in their petition.

---

son, 11 T. C. A., 658; M. P. Ry. Co. v. Harris, 1 App. C., sec. 1265. By place of performance. Ryan v. M. K. & T. Ry. Co., 65 T., 13; Seiders v. Life Assn., 93 T., 194; Life Assn. v. Harris, 94 T., 25; Good v. Caldwell, 11 T. C. A., 515; Applebaum v. Bates, 3 App. C., sec. 167. If to be partly performed in different states, intention of parties governs. Ryan v. M. K. & T. Ry. Co., 65 T., 13. Seems that marriage contracts are an exception to general rule of lex loci, contractus. Shreck v. Shreck, 32 T., 578. If subject of contract is land, the

It is unnecessary for the court, in these cases, to go into the investigation of what may be considered reasonable notice, as no notice appears to have been alleged by the plaintiffs or attempted to be proven.

The isolated question is then presented: Could the plaintiffs in the court below recover upon the bills sued on, in the absence of the allegations of demand and notice of nonpayment, duly supported by proof? We think not.

There is no portion of the law relating to negotiable paper which has been more fully discussed and clearly defined than that fixing the responsibility of drawers and indorsers, and the circumstances either positive or negative which release them. Why is notice of nonpayment in these cases considered necessary? Let the authorities answer.

In 3 Kent, 104, it is said that the object of notice is to afford an opportunity to the drawer and indorsers to obtain security from those persons to whom they are entitled to resort for indemnity. In 14 Martin, 541, it is decided by the Supreme Court of Louisiana to be obligatory upon the holder of a bill to present it and give notice of its dishonor, to entitle him to sue the drawer. In Bayley on Bills, 286, the doctrine of notice is thus broadly laid down: "that the drawer of a bill and every indorser is, prima facie, entitled to bring an action on paying it, and therefore can insist on a want of notice."

There are some excepted cases in which notice is not necessary, as where payment is refused for want of funds. But if the plaintiffs rely on proof of the want of funds in the hands of the drawee to excuse notice, it is equally necessary that their petition should contain that averment.

We may then regard it as settled, that to enable the holder to recover against the drawer of a bill of exchange, he must aver in his petition and prove upon the trial presentation for payment and notice of dishonor, or the want of funds in the hands of the drawee, to excuse him therefrom; otherwise he must fail in his action.

It may be proper here to remark, that the right of action against the drawer accrued to the holders before the passage of the act of Congress, approved January 25, 1840, which dispenses with protest and notice.

The plaintiffs in the court below not having set forth in their petitions that notice of nonpayment had been given to the drawer, nor averred a want of funds in the hands of the drawee to excuse such notice, and the defendant having demurred to plaintiff's petition for the want of the

---

lex loci rei situs governs. A mortgage executed without the State, contrary to its laws or public policy, is void. Cantu v. Bennett, 39 T., 303; Fowler v. Bell, 90 T., 150. Contract valid under lex loci contractus is valid everywhere, unless in contravention of lex fori. If void under lex loci contractus, void everywhere. Andrews v. Hoxie, 5 T., 171, 189; Shelton v. Marshall, 16 T., 344; Ryan v. M. K. & T. Ry. Co., 65 T., 13; Weider v. Maddox, 66 T., 372; Fowler v. Bell, 90 T., 150; Tuckett v. Herdic, 5 T. C. A., 690; T. & P. Ry. Co. v. Davis, 2 App. C., sec. 191. If lex loci contractus is not alleged and proved, lex fori will be applied. Hill v. McDermott, Dal., 419; M. K. & T. Ry. Co. v. Cocreham, 10 T. C. A., 166. Whether a writ is wrongfully sued out, is determined by the laws of the State where it was obtained. Wiley v. Traiwick, 14 T., 662.

necessary allegations, and the demurrer having been improperly over-
ruled, it is considered by this court that the demurrer be sustained and
the judgment of the district court annulled and reversed; and that the
cases be sent back, with directions to the district court to allow the plaint-
iffs to amend and proceed to trial upon the merits of their cause.

*Reversed and remanded.*